**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JEFFREY J. GUNN,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.   22-cv-995** |
| | : | |
| **KILOLO KIJAKAZI,** | : | |
| **Acting Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **December 4, 2023**

Plaintiff Jeffrey J. Gunn brought this action seeking review of the Acting Commissioner of Social Security Administration's decision denying his claim for Social Security Disability Insurance (SSDI) and Supplemental Security Income (SSI) benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  This matter is before me for disposition upon consent of the parties.  For the reasons set forth below, Plaintiff's Request for Review (ECF No. 8) is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

I.      **PROCEDURAL HISTORY**

On March 27, 2019, Plaintiff protectively filed for SSDI and SSI, alleging disability since October 10, 2018, due to rheumatoid arthritis, chronic lymphocytic leukemia, spine neck condition, hypoglycemia, hepatitis C-liver, insomnia, high blood pressure-hypertension, depression, eczema and MRSA (methicillin-resistant staphylococcus aureus).  (R. 347, 360). Plaintiff's applications were denied at the initial level and upon reconsideration, and Plaintiff

requested a hearing before an Administrative Law Judge (ALJ).  (R. 209-18, 224-33, 236-40).
Plaintiff, represented by counsel, and a vocational expert (VE) testified at the September 17,
2020 administrative hearing.  (R. 100-35).  On October 27, 2020, the ALJ issued a decision
unfavorable to Plaintiff.  (R. 65-90).  Plaintiff appealed the ALJ's decision, but the Appeals
Council denied Plaintiff's request for review on January 14, 2022, thus making the ALJ's
decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On March 15, 2022, Plaintiff filed a complaint in the United States District Court for the
Eastern District of Pennsylvania.  (Compl., ECF No. 1).  On July 6, 2022, Plaintiff filed a Brief
and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 8).  The Acting
Commissioner filed a Response on July 20, 2022, and on August 18, 2022, Plaintiff filed a reply.
(Resp., ECF No. 9; Reply, ECF No. 15).  On July 28, 2023, this case was reassigned from the
Honorable David R. Strawbridge, United States Magistrate Judge, to me.  (Order, ECF No. 16).
On August 7, 2023, Plaintiff consented to my jurisdiction pursuant to 28 U.S.C. § 636(C).
(Consent, ECF No. 18).

## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here
the evidence relevant to the instant request for review.

Plaintiff was born on September 11, 1960, and was 58 years old on the alleged disability
onset date.  (R. 347).  He completed high school, two years of college and state licensing and
testing for mortgage origination.  (R. 361).  Plaintiff previously worked as a loan officer.  (*Id.*).

---

[1]  Because Plaintiff's request for review implicates only his mental impairments, the
Court does not summarize the evidence relating to any physical impairments.

A.      **Medical Evidence**

Plaintiff initiated mental health treatment on April 12, 2019, when he received an intake assessment at Family Service Association of Bucks County (Family Service).  (R. 653).  He claimed to be disabled and reported depression, although his mental examination was largely normal except for past suicidal ideation without plans to harm himself, sleep and appetite disturbances, and a low energy level.  (R. 657-58).  He had "fair" control over his psychiatric symptoms and became depressed primarily when he "realize[d] [he] can't work anymore."  (R. 658).  He also reported anxiety, panic attacks, symptoms of posttraumatic stress disorder (PTSD), prior substance abuse, avoiding thoughts or reminders of prior trauma, hypervigilance, and numbness or detachment.  (R. 661-62).  He was diagnosed with anxiety disorder, unspecified; major depressive disorder, recurrent, mild; and PTSD, unspecified.  (R. 661).  At follow up visits in May and June 2019 with Brian Long, M.D., Plaintiff's mental status examination results were largely normal, although he reported flashback and a startle response stemming from his father's massive stroke when Plaintiff was a child.  (R. 633-36, 643-45, 649-50, 907-08).

At his October 3, 2019 visit, Plaintiff reported improved depression and anxiety, although the latter, which had by this point become "more the issue," interrupted his ability to have positive emotions like hope.  (R. 934).  At a January 2020 appointment with Barry Rebeck, M.D., Plaintiff described his history of trauma and substance abuse and reported depression, poor sleep quality, hopelessness, trouble concentrating and focusing, and a lack of energy, motivation and pleasure.  (R. 892).  His mental status examination was normal except for a depressed and anxious mood, impulsive judgment, and problems with attention, concentration and focusing.  (R. 894).  By February 2020, his mood, energy, sleep, motivation and

3

hopelessness had improved and he was more "even keeled" with Cymbalta, although he continued to mentally replay prior trauma at times.  (R. 911, 913-14).  At March 2020 visits with his therapist, Nina Wommack, M.S., of Family Service, Plaintiff reported that practicing qui gong had helped his depression.  (R. 1003, 1005, 1009).  In April 2020, Plaintiff reported finding it "hard emotionally" to deal with the pandemic lockdown, but also that he felt "100% better" on medication.  (R. 989, 1007).  Attending Alcoholic Anonymous meetings online and writing poetry also helped his mental state.  (R. 1009-10).  His mental status examination was normal except for a depressed, anxious and reactive mood.  (R. 992-93).

At May 2020 visits with Ms. Wommack, Plaintiff reported that his financial situation caused him stress but that he was doing "okay" because he had been able to refinance some loans and collect rent from his tenants.  (R. 998,1012).  At another visit later that month he talked about his "clairvoyance" because he had thought of things that he subsequently saw on television.  (R. 1013).  Ms. Wommack described this as "just an intuition" related to media phenomena and told Plaintiff that "he was very intuned [sic] to his surroundings."  (*Id.*).  Ms. Wommack felt that Plaintiff was "trying to find meaning and understanding in his life" but that he "appear[ed] happier."  (R. 1014).  The following month, Plaintiff "continued to explore his psychic feelings and understand what it [sic] means to his life."  (R. 1016).  He claimed that his family members had similar abilities.  (*Id.*).  Ms. Wommack "just validated his feelings" on this topic.  (*Id.*).  Plaintiff also discussed having a "special connection" with a prior therapist whom he wanted to contact through "psychic means," which made Ms. Wommack uncomfortable and led her to discuss the issue with her supervisor following the session.  (*Id.*).  In July 2020, Ms. Wommack explained the inappropriateness of Plaintiff entering a relationship with his prior therapist and the ethical boundaries of a therapist-patient relationship.  (R. 1018).  Plaintiff

responded that "he was optimistic about the future and just considered the therapist as his muse." (*Id.*).  Ms. Wommack believed that Plaintiff was aware that his interest in his prior therapist was only a "dream" and "not happening," but that he was using the idea to "keep himself on a track and in a spiritual place."  (*Id.*).  She noted that she would help Plaintiff "cont[inue] to explore these ideas . . . ."  (*Id.*).

On October 21, 2019, State agency psychological consultant Thomas Fink, Ph.D., opined that Plaintiff had mild limitations in understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself.  (R. 143).  Upon reconsideration, on April 10, 2020, State agency psychological consultant Richard Small, Ph.D., opined that Plaintiff had no limitation in understanding, remembering or applying information and mild limitations in the remaining areas of mental functioning.  (R. 177).

**B.      Non-Medical Evidence**

The record also contains non-medical evidence.  In an Adult Function Report dated July 16, 2019, Plaintiff described his activities of daily living (ADLs) as including caring for his son and dog, performing various house chores, driving, shopping, managing money, interacting with "a few friends," and going to support groups and his son's athletic events.  (R. 390-93).  He endorsed difficulties completing tasks, concentrating, handling stress or changes in routine, and following instructions, although he also stated that he can follow them "fairly well" and that he gets along with authority figures.  (R. 394-95).  His mother also completed a Third Party Adult Function Report in which she reported that Plaintiff engaged in similar ADLs but with similar difficulties.  (R. 399-407).

At the September 17, 2020 administrative hearing, Plaintiff testified that sometimes his depression keeps him from doing things.  (R. 117).  He described ADLs of practicing qui gong, gardening and playing the guitar.  (R. 123-26).  He complained of his medication causing him to feel detached and unable to focus.  (R. 127).

## III.    ALJ'S DECISION

Following the most recent administrative hearing, the ALJ issued a decision in which she made the following findings:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2024.

2.    The claimant has not engaged in substantial gainful activity since October 10, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: cervical and thoracic degenerative disc disease, rheumatoid arthritis and obesity (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except occasional balancing, stooping, kneeling, crouching, and climbing ramps and stairs.  Occasional exposure to

extreme cold, wetness, humidity and vibration.  No exposure to unprotected

heights and unprotected moving mechanical parts.

6. The claimant is capable of performing past relevant work as a loan officer (DOT

#241.367-018, SVP6, sedentary exertion).  This work does not require the

performance of work-related activities precluded by the claimant's residual

functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security

Act, from October 10, 2018, through the date of this decision (20 CFR

404.1520(f) and 416.920(f)).

(R. 8-35).  Accordingly, the ALJ found Plaintiff was not disabled.  (R. 30).


## IV. LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to

the Commissioner that he or she cannot engage in substantial gainful activity because of a

medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of at least 12 months.  42

U.S.C. § 1382c(a)(3)(A).  A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently
> engaged in substantial gainful activity.  If she is not, then the
> Commissioner considers in the second step whether the claimant has
> a "severe impairment" that significantly limits her physical or
> mental ability to perform basic work activities.  If the claimant
> suffers a severe impairment, the third inquiry is whether, based on
> the medical evidence, the impairment meets the criteria of the
> impairment listed in the "listing of impairments," . . . which result
> in a presumption of disability, or whether the claimant retains the
> capacity to work.  If the impairment does not meet the criteria for a
> listed impairment, then the Commissioner assesses in the fourth step
> whether, despite the severe impairment, the claimant has the

> residual functional capacity to perform her past work.  If the
> claimant cannot perform her past work, then the final step is to
> determine whether there is other work in the national economy that
> the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4).  The disability claimant bears the burden of establishing steps one through four.

If the claimant is determined to be unable to resume previous employment, the burden shifts to

the Commissioner at step five to establish that, given the claimant's age, education, work

experience, and mental and physical limitations, he is able to perform substantial gainful

activities in jobs existing in the national economy.  *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88,

92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited.  A district court is

bound by the factual findings of the Commissioner if they are supported by substantial evidence

and decided according to correct legal standards.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir.

1999).  Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a

reasonable mind might accept as adequate."  *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118

(3d Cir. 2000) (citations omitted).  Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it.

*Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).  The court has plenary review of legal

issues.  *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In his request for review, Plaintiff raises two claims:

> (1)    The ALJ erred as a matter of law by improperly failing to
> find Plaintiff's major depressive disorder, anxiety, and post
> traumatic stress disorder severe, and overestimated his

residual functional capacity as a result.

(2)    The ALJ erroneously omitted some of Plaintiff's credibly established limitations from the RFC and hypothetical, and the vocational expert testimony in response did not constitute substantial evidence that Plaintiff could perform his past relevant work.

(Pl.'s Br., ECF No. 8, at 4-22).

### A.    "Non-severe" Mental Impairments Resulting in Expanded RFC

Plaintiff first argues that the ALJ erroneously found at step two of the sequential analysis that his major depressive disorder, anxiety and PTSD were non-severe impairments, resulting in an overstated RFC. (Pl.'s Br., ECF No. 8, at 4-13; Reply, ECF No. 15, at 1-8). In cases involving mental impairments, the Social Security Administration regulations set forth the analysis for determining whether the mental impairment is severe. 20 C.F.R. §§ 404.1520a, 416.920a. If the ALJ initially determines that a claimant's symptoms, signs, and laboratory findings support the existence of a medically determinable impairment, then he must assess the claimant's limitations in four functional areas to determine whether the impairment is "severe." 20 C.F.R. §§ 404.1520a, 416.920a. The four functional areas are: understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). If the ALJ rates the degree of the claimant's limitations as "none" or "mild," he or she generally will conclude that the impairment is not severe unless the evidence otherwise indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).

A medical diagnosis is insufficient to establish severity at step two; Plaintiff also must present evidence that a limitation significantly limited his ability to do basic work activities.

*Salles v. Comm'r of Soc. Sec.,* 229 F. App'x 140, 145 (3d Cir. 2007) (citing 20 C.F.R. §§ 404.1520(c), 404.1521(a); *Ramirez v. Barnhart*, 372 F.3d 546, 551 (3d Cir. 2004)).  Further, a severe impairment is distinguished from "a slight abnormality," which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience.  *See Bowen*, 482 U.S. at 149-51.  However, "[t]he key question when reviewing the ALJ's step two determination is not whether Plaintiff's impairments were in fact severe, but, whether substantial evidence supports the ALJ's finding that those impairments were not severe."  *Golubosky v. Comm'r of Soc. Sec.*, No. 13–196, 2014 WL 3943029, slip op. at *3 (W.D. Pa. Aug. 12, 2014).  Plaintiff retains the burden of showing that an impairment is severe. *Bowen*, 482 U.S. at 146 n.5.

Here, the ALJ determined that Plaintiff had no or only mild limitations in the four functional areas.  She concluded that he had no limitation in understanding, remembering or applying information because of his lack of reported problems with memory, ability to follow instructions, educational and professional attainment, normal mental status examinations, ADLs, and lack of cognitive deficits.  (R. 73).  She found that he had a mild limitation in interacting with others, citing his anxiety and panic attacks but lack of observed attacks or diagnosis of any social phobias, his ability to get along with others (including authority figures), his normal mental status examinations, and his responsiveness to treatment.  (*Id.*).  The ALJ assessed a mild limitation in concentrating, persisting or maintaining pace: she noted Plaintiff's insomnia, inability to pay attention when in pain, and reported difficulties with attention, concentration, and focusing, but also his ability to pay attention for 35 to 50 minutes if not in pain, his intact memory, the lack of testing by treating sources to confirm or measure any deficits, and his ability to drive and manage finances, including rental income.  (R. 74).  Lastly, the ALJ determined that

Plaintiff had a mild limitation in adapting or managing himself due to his difficulty handling stress and changes in routine, his impulsiveness "at times," his otherwise normal mental status examinations, his ADLs, his improved mental functioning following medical treatment, and his optimism about the future. (*Id.*). Accordingly, she concluded that Plaintiff's mental limitations were not severe.

### 1.    The Parties' Positions

Plaintiff posits that the ALJ "committed a major mistake of fact" when she found Drs. Fink's and Small's opinions persuasive, in part because she erroneously stated that Plaintiff had not been treated by a psychiatrist when, in fact, he treated with psychiatrists Drs. Long and Rebeck. (Pl.'s Br., ECF No. 8, at 6). He also cites evidence from his visits with Drs. Long and Rebeck reflecting a variety of symptoms relating to his mental conditions, uneven improvement, prior psychiatric hospitalizations and suicidal thoughts, and self-administered diagnostic testing noting moderate depression. (*Id.* at 7-8). He further points to his visits with therapist Ms. Wommack, particularly his claimed "clairvoyance" and "psychic feelings" and his romantic interest in a prior treating therapist. (*Id.* at 8-9). He claims that the ALJ disregarded this evidence without explanation and instead focused on therapy notes indicating that he was "okay" without appreciating that this reference was to his financial, rather than mental, well-being. (*Id.* at 9-11 (citations omitted)). Plaintiff contends that his mental impairments are severe pursuant to the regulations and that the ALJ failed to afford him "the benefit of the doubt" as required by SSR 85-28 and *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546-47. (*Id.* at 11).

He continues that the ALJ's failure to recognize his severe mental impairments at step two led to her incorporating no related limitations in his RFC and incorrectly finding at step four that he could return to his past relevant work as a loan officer, even though the VE testified that

this position is "intense" and requires nonstop work "to move a lot of mortgages to stay viable." (*Id.* at 11-13).  He argues that if the ALJ had properly assessed his mental impairments as severe, she would have concluded that he could not return to his prior "inherently complex, detailed and stressful" work and, therefore, a finding of disability would have been compelled pursuant to the Medical Vocational Guidelines.  (*Id.* at 13).

The Acting Commissioner responds that in finding Plaintiff's mental impairments not severe, the ALJ correctly observed that Plaintiff never sought mental health treatment until one month after filing for benefits and that his mental examination results were normal.  (Resp., ECF No. 9, at 3-4).  She notes that Plaintiff improved significantly with therapy, medication and AA meetings, despite anxiety about the pandemic, and was able to carry out an array of ADLs inconsistent with work-preclusive mental impairments.  (*Id.* at 4).  She then summarizes the ALJ's findings of at most mild limitations in each of the four relevant areas of functioning and highlights the substantial evidence supporting these findings.  (*Id.* at 4-6).  As for Plaintiff's contention that the ALJ incorrectly stated that he had not been treated by a psychiatrist, the Acting Commissioner points out that this misstatement occurred later in the decision when she was evaluating the administrative findings of the State agency psychological experts, not at step two, where she instead discussed Plaintiff's treatment by psychiatrist Dr. Long.  (*Id.* at 6).  She further contends that the error was harmless because, as the ALJ also noted, the administrative findings were consistent with the conservative treatment record and her own findings regarding the non-severe nature of Plaintiff's mental impairments.  (*Id.*).  She maintains that Drs. Fink and Small were also the only medical experts to opine on her mental functioning and that the persuasiveness of their opinions did not depend on whether Plaintiff saw a psychiatrist in addition to a therapist.  (*Id.* at 6-7 (citations omitted)).

Regarding Plaintiff's statements about his purported extrasensory abilities and romantic interest in his former therapist, the Acting Commissioner observes that the ALJ is not required to reference every piece of evidence.  (*Id.* at 7 (citation omitted)).  She also asserts that Plaintiff fails to explain how these musings during therapy establish functional limitations, particularly where his mental status examinations remained almost completely normal throughout the review period and did not reflect any thought or perceptual disturbances.  (*Id.* at 7-8).  She notes that even Plaintiff's therapist, Ms. Wommack, recorded that she "validated" Plaintiff's feelings about his preternatural abilities and was "open to his intuition."  (*Id.* at 8 (citations omitted)).  The Acting Commissioner acknowledges that Plaintiff's romantic interest in his former therapist made Ms. Wommack uncomfortable, but she also points out that treatment notes reflect that Plaintiff understood that this "dream . . . would not be happening," even while Ms. Wommack helped Plaintiff to "explore" the idea to remain "in a spiritual place."  (*Id.*).  Additionally, the Acting Commissioner argues that the ALJ referenced Plaintiff's reporting that he was "okay" only to show that he had the mental functioning to refinance loans and manage rentals and that she also cited other evidence that Plaintiff was doing reasonably well mentally.  (*Id.*).

In reply, Plaintiff repeats that the ALJ improperly ignored "high[ly] probative" evidence, regarding his delusions about his psychic abilities and his "fixation" on his prior therapist, reflecting more than minimal limitations on his functioning.  (Reply, ECF No. 15, at 1-3, 6 (citations omitted)).  He discounts the relevance of his mental examinations showing generally normal results, instead contending that they are "only one diagnostic tool" employed to evaluate the severity of a claimant's mental impairments and that courts should be "cautious" about assuming work functionality based on findings in a therapeutic setting.  (*Id.* at 3 (citing 20 C.F.R. Part 404, Subpt. P, App. 1, Sections 12.00C(2), 12.00F(3)(c)) (additional citations omitted));

*Adams v. Astrue*, No. C12-901-RSM-BAT, 2013 WL 308965, at *2 (W.D. Pa. Jan. 7, 2013);

*Hartman v. Bowen*, 636 F. Supp. 129, 131-32 (N.D. Cal. 1986).  He claims that purported abilities

like mindreading and clairvoyance are consistent with psychosis and schizotypal personality

disorders.  (*Id.* at 5 (citing *Jones v. Comm'r of Soc. Sec.*, No. 1:05-CV-1603, 2009 WL 1542555, at

*5 n.5 (N.D.N.Y. June 1, 2009))).  He reiterates that if the ALJ had properly assessed the severity

of his impairments she would not have concluded that he could perform his exacting and highly

skilled prior work as a loan officer, thus compelling a finding of "disabled" pursuant to the

guidelines.  (*Id.* at 7-8).

### 2.     Analysis

Plaintiff first observes that the ALJ made a factual error when she cited Plaintiff's

purported failure to obtain treatment from a psychiatrist as a basis for finding persuasive the

opinions of State agency psychological consultants Drs. Fink and Small when, in fact, she was

treated by psychiatrists Drs. Long and Rebeck.  (Pl.'s Br., ECF No. 8, at 6).  Initially, it is unclear

how this error at step four would impact the earlier step two determination at issue that Plaintiff's

mental impairments were non-severe.  (R. 73-74).  At step two, the ALJ not only noted the

treatment by "Dr. Brian Long," but also discussed findings from multiple visits with him.  (R.

72).  Thus, it is apparent that when she made her severity determination at step two she was

aware that Plaintiff had received psychiatric treatment, notwithstanding her subsequent statement

to the contrary.

In any event, the ALJ's misstatement at step four was harmless because Plaintiff's

supposed lack of psychiatric treatment was not the sole reason that she found the State agency

opinions persuasive.  The ALJ further noted that Drs. Fink's and Small's opinions finding no or

only mild mental limitations were persuasive because they were consistent with the record

evidence.  (R. 82-83).  Indeed, the cited evidence included treatment records from Plaintiff's

psychiatrists, Drs. Long and Rebeck, despite the misstatement.  (R. 82-83 (citing R. 626-68, 879-

942, 965-1019)).  Additionally, as the Acting Commissioner notes, no other medical experts

opined on Plaintiff's mental functioning, and thus none determined any *greater* limitations.

Under these circumstances, remand to the ALJ to correct her mistake would serve no purpose

because it would have no effect on the outcome of the matter.  *See Rutherford v. Barnhart*, 399

F.3d 546, 553 (3d Cir. 2005) ("remand is not required here because it would not affect the

outcome of the case"); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No  principle of

administrative law or common sense requires us to remand a case in quest of a perfect opinion

unless there is reason to believe that the remand might lead to a different result.").

     Plaintiff next suggests that the ALJ should have characterized his mental impairments as

severe in light of the record evidence, including his symptoms of panic attacks, worsening

anxiety, prolonged depression, difficulty concentrating and focusing, difficulty sleeping, prior

significant loss, mood swings, appetite disturbances, low energy level, guardedness and

watchfulness, feelings of numbness and detachment, startle response, and hopelessness; prior

psychiatric hospitalizations and suicidal thoughts; prior trauma about which he attempted to

avoid thinking, including his father's massive stroke during Plaintiff's childhood; self-

administered diagnostic testing noting moderately severe depression; and diagnoses for anxiety

disorder, unspecified; major depressive order, recurrent, mild; and PTSD, unspecified.  (Pl.'s Br.,

ECF No. 8, at 7-8 (citing 631, 633, 642, 651, 657-58, 934, 990, 992-993)).  The Acting

Commissioner counters with evidence cited by the ALJ tending to support her severity

determination, including Plaintiff's failure to seek any mental health treatment until after he filed

his disability applications; mental status examinations showing that Plaintiff was calm, friendly,

cooperative and fully oriented with a (usually) even or euthymic mood, logical and goal-directed thought processes, intact memory, fair control over his symptoms, no thought disturbances, and good insight, judgment and impulse control; improvement with therapy and AA meetings and additional "100%" improvement after starting medication; and a wide range of ADLs such as writing poetry, cooking, organizing, practicing qui gong, caring for his son, refinancing loans and managing rental incomes.  (R. 72-73 (citing R. 633-36, 644, 649-50, 658, 891-94, 911, 913, 989, 992-93, 1009, 1012)).

Plaintiff follows up that the mental examinations cited by the ALJ and Acting Commissioner are but "one diagnostic tool" among several other types of evidence used to evaluate the severity of a claimant's impairments, (Pl.'s Br., ECF No. 8 at 3), but it is apparent from the foregoing list of cited evidence that the ALJ relied upon far more than simply examination results.  Several of the pieces of evidence she expressly considered fit the categories of evidence enumerated in the regulation cited by Plaintiff, including self-reported symptoms and the timing and beneficial effects of any medication taken or therapy received.  *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00C(2); *see also id.* §§ 404.1529(a) (the ALJ must consider "how the symptoms affect [the claimant's] activities of daily living"), 416.929(a) (same).  Plaintiff does not dispute that it was proper for the ALJ to consider his mental status examination results alongside this additional evidence.  At most, Plaintiff simply points to evidence that might have supported a contrary conclusion by the ALJ, but remand is not warranted on this basis.  An ALJ's decision does not lack substantial evidence simply because the ALJ might have reached a different result.  *See Simmonds*, 807 F.2d at 58 ("While there is other evidence in the record that could support a finding of disability . . . , our inquiry is not whether the ALJ could have reasonably made a different finding based on this record.  Rather, we must review whether the ALJ's actual findings

are supported by substantial record evidence.").

Plaintiff also zeroes in on his statements to his therapist, Ms. Wommack, about his purported psychic abilities and his romantic interest in a former treating therapist, contending that the ALJ improperly ignored these "delusions" showing the severity of his mental impairments.  (Pl.'s Br., ECF No. 8, at 8-11; Reply, ECF No. 15, at 1-2, 6).  However, "[t]here is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record."  *Hur v. Barnhart*, 94 F. App'x. 130, 133 (3d Cir. 2001).  This principle holds particularly true here, where notwithstanding Plaintiff's baseless ideas, his treatment providers expressly noted that Plaintiff did not suffer from thought or perception disturbances.  (R. 635, 644, 650, 657, 894, 914, 992).  Indeed, Wommack herself described Plaintiff's purported clairvoyance as "just an intuition," invited him to continue to explore "his psychic feelings" and their meaning in his life, and generally "just validated his feelings."  (R. 1013-16).  Plaintiff insists that "odd beliefs or magical thinking *that influences behavior and* is inconsistent with subcultural norms" may be associated with schizotypal disorders, and that mindreading is a symptom of psychosis, but he offers no evidence that his nonconforming beliefs regarding his extrasensory powers actually influenced his behavior, and in any event, the mental impairments at issue are anxiety, depression, and PTSD, not a schizotypal disorder or psychosis, for which Plaintiff has no diagnoses.  (Reply, ECF No. 15, at 5 (citing 2009 WL 1542555, at *5 n.5) (emphasis added) (additional citation omitted)).  Further, as for Plaintiff's inappropriate "fixation" on his prior therapist, Wommack explained the ethical boundaries of a therapist-patient relationship, to which Plaintiff responded that he "just considered the therapist as his muse."  (R. 1018).  Again, Plaintiff points to no bizarre behavior flowing from these beliefs.

Additionally, Plaintiff complains that instead of discussing the foregoing evidence, the

ALJ focused on a therapy note in which Plaintiff stated that he was doing "okay" financially, which she misread as referring to his mental state. (Pl.'s Br., ECF No. 8, at 9). However, the context of the ALJ's statement specifically references Plaintiff's "refinancing [his family's] loans" and that "his renters have been able to pay most of their rent in light of COVID," strongly suggesting that the ALJ was referring to Plaintiff's *financial* well-being. (R. 73). Moreover, as the ALJ also observed, the treatment note further stated that Plaintiff was "feeling better" due to his finances being sorted out, such that insofar as the ALJ also intended to refer to Plaintiff's mental well-being, this statement was not erroneous given the acknowledged interplay between Plaintiff's finances and mental status. (*Id.*).

Because substantial evidence supports the ALJ's step two determination that Plaintiff's mental impairments were not severe, his remaining arguments regarding the ramifications of this error later in the sequential analysis simply fall away. (Pl.'s Br., ECF No. 8, at 11-13; Reply, ECF No. 15, at 6-8). Plaintiff's mental RFC was not inflated as a result of the ALJ's conclusion that these impairments were non-severe, and she therefore did not err on this basis when she determined at step four that he could return to his past relevant work as a loan officer. Because Plaintiff could return to past relevant work, he did not "grid out" under the Medical Vocational Guidelines such that a finding of disabled was required. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, § 202.06. For these reasons, remand on the proffered basis is denied.

**B.    Non-inclusion of Mental Limitations in RFC and Resulting Hypothetical**

Plaintiff also asserts that the ALJ failed to account for his mental limitations in her formulation of his RFC, resulting in a flawed hypothetical to the VE. (Pl.'s Br., ECF No. 8, at 14-22). After concluding that Plaintiff had no or only mild limitations in the four functional areas, as set forth above, the ALJ stated at the close of her step two analysis that these limitations

"are not a residual functional capacity assessment," which would "require[ ] a more detailed assessment" at steps four and five, and that "[t]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  (R. 74).  In that RFC assessment, the discussion of Plaintiff's mental limitations consisted of a summary of Drs. Fink's and Small's administrative findings, followed by this statement: "This opinion is persuasive, it is generally consistent with and supported by the evidence of the record that reflects conservative treatment with a therapist, not a psychiatrist, and to the extent that the claimant has no more than mild limitations in mental functioning (Exhibits 9F, 20F, 25F, 26F)."  (R. 82).  The assessment did not discuss any other evidence regarding Plaintiff's mental health, and it did not state how, if at all, these mild limitations had been addressed.  The RFC itself included no mental limitations.  (R. 77).

1.    **The Parties' Positions**

Plaintiff asserts that the RFC determined by the ALJ, and thus the hypothetical she posed to the VE, erroneously omitted Plaintiff's mental limitations, such that the VE's response concluding that Plaintiff could perform past relevant work as a loan officer was not substantial evidence for the ALJ's determination to that effect.[2]  (Pl.'s Br., ECF No. 8, at 17-18).  Plaintiff cites several regulations and Social Security Rulings in support of the proposition that "[a]n RFC finding must include all of the limitations the ALJ has found to be supported by the evidence of record, whether arising from severe impairments or non-severe impairments."  (*Id.* at 19 (citing

---

[2]  Plaintiff also repeats her argument, rejected in the prior section, that the ALJ failed to consider the mental demands of his past relevant work as a loan officer and that, if she had done so, she would have found that he could not return to that position.  (Pl.'s Br., ECF No. 8, at 14-17; *cf. id.* at 13 ("Due to the inherently complex, detailed and stressful nature of this work, the ALJ would have correctly determined that Mr. Gunn would not have been able to perform his past relevant work had she properly assessed the true severity of his mental impairments, which clearly rendered him incapable of the demands of this highly skilled level of employment.")).

20 C.F.R. §§ 404.1523(c), 404.1529(d)(4), 404.1545(a)(2)); SSR 96-8p, 1996 WL 374184, at *5

(July 2, 1996); SSR85-15, 1985 WL 56857 (Jan. 1, 1985)).   He also cites a substantial body of case

law[3] holding that an unexplained failure to account for mild limitations in the formulation of an

RFC and hypothetical is reversible error.   (*Id.* at 19-21 (citing *Wells v. Colvin*, 727 F.3d 1061 (10th

Cir. 2013) and cases from district courts inside and outside of the Third Circuit)).   He notes that

the ALJ's conclusion that he could return to his past relevant work resulted in his being found

disabled pursuant to the guidelines.   (*Id.* at 21-22).

    The Acting Commissioner responds that the ALJ was not required to include mental

limitations in Plaintiff's RFC or the hypothetical to the VE because "no additional limitations

were credibly established" in light of Plaintiff's exclusively "non-severe" mental impairments.

(Resp., ECF No. 9, at 9).   She insists that there is no "categorical rule" that the ALJ include mild

limitations determined at step two in the later RFC formulation.   (*Id.*).   She cites her own body of

supporting in-circuit, district court case law, as well as the Third Circuit's pronouncement in

*Hess* that only a "valid explanation," as opposed to any specific language, is required at steps

four and five, notwithstanding the earlier findings in the sequential analysis.   (*Id.* at 10-11).   She

highlights two cases in particular, *Brumfield v. Saul*, No. CV 19-4555, 2020 WL 4934315 (E.D.

Pa. Aug. 21, 2020), and *Northrup v. Kijakazi*, No. 1:20-CV-00412, 2022 WL889968 (M.D. Pa.

Mar. 24, 2022), in which courts have held sufficient statements like the one in the ALJ's decision

here that the RFC assessment "reflects the degree of limitation the undersigned has found in the

'paragraph B' mental function analysis."   (Pl.'s Br., ECF No. 9, at 10-12).   The Acting

---

    [3]  Plaintiff footnotes that the Third Circuit Court of Appeals has not addressed this
specific issue but has held that the ALJ must explain any refusal to incorporate a claimant's
validly determined limitations in the RFC and associated hypothetical.  (Pl.'s Br., ECF No. 8, at
21 n.7 (citing *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208-14 (3d Cir. 2019); *Ramirez v.
Barnhart*, 372 F.3d 546, 553-55 (3d Cir. 2004) (other appeals court cases omitted))).

Commissioner further posits that mild limitations do not "automatical[ly] impact on the RFC" because, pursuant to the regulations, they generally result in non-severe impairments unless the evidence otherwise shows a substantial limitation on basic work functionality. (*Id.* at 12 (citing 20 C.F.R. § 404.1520a(d)(1); *Makowski v. Comm'r of Soc. Sec.*, No. 16-1646, 2017 WL 3151243, at *7 (D.N.J. July 24, 2017))). She also cites several cases for the proposition that mild limitations in mental functioning do not preclude skilled work. (*Id.* at 12-13 (citing *O'Connor v. Comm'r of Soc. Sec.*, 466 F. App'x 96, 102 (3d Cir. 2012) (additional district court case citations omitted))).

Plaintiff replies by again citing the supporting regulations and Social Security Rulings and *Wells*, 727 F.3d 1061,[4] and adds citations to: (1) the Social Security Administration's Program Operations Manual System (POMS) directing the ALJ to consider "all of an individual's impairments, even those that are not severe" "[i]n assessing the RFC"; and (2) circuit court cases not involving mild mental functional limitations but nonetheless holding that limitations determined during the Psychiatric Review Technique employed by the ALJ must be accounted for in the RFC. (Reply, ECF No. 15, at 9 (citing *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1181 (11th Cir. 2011); *Ramirez v. Barnhart*, 372 F.3d 546 (3d Cir. 2004); POMS DI 24510.006(C)(5))). He distinguishes the Acting Commissioner's cited cases on the basis that, unlike in those cases, here the ALJ did not adequately explain the failure to include his mild limitations in the RFC. (*Id.* at 9-10).

Regarding *Brumfield* and *Northrup* specifically, and their holding that a statement by the ALJ that the RFC reflects the limitations found in the paragraph B analysis at step two is

---

[4] Plaintiff notes, apparently correctly based on this Court's research, that *Wells* is "the only published circuit authority specifically dealing with the issue of whether an ALJ must account for mild mental functional limitations in the RFC finding or explain reasons for not doing so . . . ." (Reply, ECF No. 15, at 9 n.4).

sufficient,[5] Plaintiff claims that these cases differ from the instant one because here the ALJ

disregarded evidence of his delusions showing moderate mental limitations unaccounted for in

the RFC or subsequent hypothetical to the VE and that, even if he only has mild limitations, they

would preclude his highly skilled past relevant work as a loan officer.  (*Id.* at 11).  He also

excerpts the rejection of these cases' holding in *Patricia C. v. Saul*, 19-cv-00636-JM-JLB, 2020

WL 4596757, at *13 (S.D. Cal. Aug. 11, 2020), *report and recommendation adopted sub nom.*

*Craig v. Saul*, 2020 WL 5423887 (S.D. Cal. Sept. 10, 2020), and contends that the instant case is

similar to *Patricia C.* because the ALJ failed to mention his mental conditions during the RFC

assessment beyond the required discussion of the State agency psychologists' opinions.  (*Id.* at

13).  He dismisses the assertion by the ALJ at step two that she considered Plaintiff's mild

impairments in the formulation of the RFC (like the similar statements in *Brumfield* and

*Northrup*) as "mere inconsequential boilerplate."  (*Id.* (citing *Parker v. Astrue*, 597 F.3d 920, 922

(7th Cir. 2010))).  He returns to SSR 96-8p requiring "a more detailed assessment" of the

functional areas from paragraph B when formulating the RFC and observes that rather than such

an assessment what occurred here was the "total absence" of any assessment or explanation.  (*Id.*

at 14 (citing SSR 96-8p)).  He concludes by asserting that his ability to perform skilled work

could be limited or precluded by even non-severe mental impairments.  (*Id.* (citation omitted)).

### 2.    Discussion

A mound of authority supports Plaintiff's position that an ALJ must account for even

mild mental limitations when formulating the RFC.  Starting with the regulations, 20 C.F.R. §§

404.1545(a)(2) and 416.945(a)(2) require the ALJ to "consider all . . . medically determinable

---

[5]  Plaintiff further points out that in *Brumfield* the court admitted that the ALJ's consideration of the mild mental limitations might have been "incomplete," although it viewed any error as harmless under the facts of the case.  (Reply, ECF No. 15, at 10).

impairments of which [he or she is] aware, including . . . medically determinable impairments

that are not 'severe.'"  20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).  SSR 96-8p and POMS DI

24510.006 add:

> The adjudicator must remember that the limitations identified in
> the "paragraph B" and "paragraph C" criteria are not an RFC
> assessment but are used to rate the severity of mental
> impairment(s) at steps 2 and 3 of the sequential evaluation process.
> The mental RFC assessment used at steps 4 and 5 of the sequential
> evaluation process requires a more detailed assessment by
> itemizing various functions contained in the broad categories found
> in paragraphs B and C of the adult mental disorders listings in
> 12.00 of the Listing of Impairments, and summarized on the
> [Psychiatric Review Technique Form].
>
> . . . .
>
> In assessing RFC, the adjudicator must consider limitations and
> restrictions imposed by all of an individual's impairments, even
> those that are not 'severe.'  While a 'not severe' impairment(s)
> standing alone may not significantly limit an individual's ability to
> do basic work activities, it may—when considered with limitations
> or restrictions due to other impairments—be critical to the outcome
> of a claim.  For example, in combination with limitations imposed
> by an individual's other impairments, the limitations due to such a
> 'not severe' impairment may prevent an individual from
> performing past relevant work or may narrow the range of other
> work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *4-5; *see also* POMS DI 24510.006(C)(4)-(5) (same except for

emphasizing that "**all**" limitations and restrictions must be considered).

In *Wells*, the Tenth Circuit Court of Appeals, the only circuit court to directly address the

issue, endorsed the position asserted by Plaintiff here.  727 F.3d at 1068-71.  Quoting and citing

the foregoing authorities, it also observed that "a conclusion that the claimant's mental

impairments are non-severe at step two does not permit the ALJ simply to disregard those

impairments when assessing a claimant's RFC and making conclusions at steps four and five."

*Id.* at 1068-69.  It held "inadequate" the statement of the ALJ at step two that his finding of only

non-severe mental impairments did "not result in further limitations in work-related functions in the [RFC] assessment below" because it suggested that he may have relied upon this step two finding to conclude that the claimant had no RFC limitations resulting from her mental impairments. *Id.* at 1069. The court continued that the ALJ's separate discussion of the claimant's mental impairments when assessing her credibility as part of the RFC determination, "though far from comprehensive," nonetheless "might" have fulfilled the step four duty to assess her job functionality in detail, but the conclusions reached by the ALJ lacked supporting substantial evidence. *Id.* at 1069-71. Thus, it remanded the case for further analysis of the claimant's mental impairments at steps four and five. *Id.* at 1071.

In addition, "judges in this District have consistently held that even mild limitations in the relevant domains of mental functioning must be included in an RFC assessment and hypothetical question posed to the VE that the ALJ relies upon." *Meersand v. Kijakazi*, No. 20-1084, 2021 WL 5003331, at *3 (E.D. Pa. Oct. 28, 2021) (citing *Benedetto v. Saul*, 2020 WL 5763551, *6-7 (E.D. Pa. Sept. 28, 2020); *Hefferan v. Berryhill*, No. 17-2720 (E.D. Pa. Apr. 5, 2018); *Kennedy v. Berryhill*, Civil No. 16-5478 (E.D. Pa. Jan. 23, 2018); *Metelli v. Berryhill*, 2017 WL 2570913, *1 (E.D. Pa. June 13, 2017); *Savage v. Berryhill*, No. 17-2548 (E.D. Pa. Jan. 17, 2018); *Metelli v. Berryhill*, 2017 WL 2570913, *1 (E.D. Pa. June 13, 2017); *Green v. Colvin*, 179 F. Supp. 3d 481, 486 (E.D. Pa. 2016); *Curran v. Astrue*, 2021 WL 5494616, *5 (E.D. Pa. Nov. 13, 2012); *Harman v. Astrue*, 2012 WL 94617, *2 (E.D. Pa. Jan. 11, 2012); *Washington v. Astrue*, 2009 WL 855893, *1-2 (E.D. Pa. Mar. 31, 2009)); *see also Balla v. Comm'r of Soc. Sec.*, No. 18-00386, 2019 WL 2482661, at *3 (D.N.J. June 14, 2019) ("passing reference" to mild mental limitations during discussion of State agency psychological experts' opinions was insufficient because even though the impairments might impose only "*de minimis*" limitations or "require minor

24

modifications," it was not up to the court to "independently make" those findings) (citing and quoting *Curry v. Comm'r of Soc. Sec.*, No. 15-cv-07515, 2017 WL 825196, at *4-6 (D.N.J. Mar. 2, 2017)); *Curry*, 2017 WL 825196, at *4-6 (same; mix of mild and moderate limitations); *Kich v. Colvin*, 218 F. Supp. 3d 342, 357 (M.D. Pa. Nov. 2, 2016) (remanding ALJ decision that "made no explicit finding that the deficiencies were so minimal that they would not limit Plaintiff's ability to perform simple tasks," even though the ALJ determined that she would have only mild limitations if she stopped her alcohol use).

Of this substantial body of authority, the Acting Commissioner says nothing.  (Resp., ECF No. 9, at 9-13).  Nonetheless, her position is not without its own support.  As she observes, "numerous courts within this Circuit have found that there is no legal requirement that a mild limitation mandates a corresponding RFC limitation."  *Silbaugh v. Saul*, No. 4:19-CV-1394, 2020 WL 5034140, at *9 (M.D. Pa. July 31, 2020), *report and recommendation adopted by* Doc. 17 (E.D. Pa. Aug. 14, 2017) (citing *Younge v. Berryhill*, No. CV 16-5271, 2017 WL 2978758, at *13 (E.D. Pa. May 31, 2017); *Smith v. Comm'r of Soc. Sec.*, No. 15-7525, 2016 WL 3912850, at *9 (D.N.J. July 19, 2016); *Delio v. Comm'r of Soc. Sec.*, No. 13-78-E, 2014 WL 4414830, at *4 (W.D. Pa. Sept. 8, 2014)); *see also Long v. Kijakazi*, No. CV20-1358-MN, 2022 WL 609620, at *6 (D. Del. Jan. 31, 2022), *report and recommendation adopted by* 2022 WL 609160 (D. Del. Feb. 15, 2022) ("Although an ALJ must consider limitations imposed by all of an individual's impairments, both severe and non-severe, when making their RFC assessment, there is no requirement that an ALJ must find or include limitations associated with mild impairments.") (citing *Smith v. Comm'r of Soc. Sec.*, 2016 WL 3912850, at *9 (D.N.J. July 19, 2016)); *D.C. v. Comm'r of Soc. Sec.*, No. 20-2484, 2021 WL 1851830, at *5-6 (D.N.J. May 10, 2021) (finding that an "in-depth analysis" of mild mental limitations was not required, expressing doubt that the

failure to analyze them constituted reversible error, and finding that any error did not warrant reversal because an ALJ need not include "minimal or negligible" limitations in the RFC) (quoting *Makowski v. Comm'r of Soc. Sec.*, No. CV 16-1656, 2017 WL 3151243, at *7 (D.N.J. July 24, 2017)).  In particular, *Brumfield*, 2020 WL 4934315, at *4, and *Northrup*, 2022 WL889968, at *4-5, approved language, like that in the ALJ's decision here, that the RFC assessment "reflects" the limitations determined in paragraph B.

The question in this case boils down to what constitutes a "valid explanation" for the omission of any mental limitations in the RFC or associated hypothetical.  *See Hess*, 931 F.3d at 213-14; *Ramirez*, 372 F.3d at 555.  Although not dealing with mild mental impairments, in *Ramirez* the Third Circuit explained that findings of limitation in the broad functional areas play a role in steps four and five and thus need to be accounted for in the RFC and hypothetical to the VE or "a valid explanation for th[eir] omission provided," despite the fact that they are not themselves part of the RFC assessment.  372 F.3d at 555.

This Court remains unconvinced that a statement by the ALJ at step two that the RFC set forth later in the decision reflects the limitations found in the paragraph B mental functional analysis – like the one here and in *Brumfield* and *Northrup* – passes muster.  Such a statement is the functional equivalent of the one held insufficient in *Wells* that the finding of only non-severe mental impairments did "not result in further limitations in work-related functions in the [RFC] assessment below," which the Tenth Circuit rejected on the basis that it indicated that the ALJ possibly relied upon this step two conclusion in finding that the claimant had no mentally-based RFC limitations.  727 F.3d at 1069.

The court in *Patricia C.* expounded upon why such a statement is deficient:

> Despite this acknowledgement [that the limitations identified at paragraph B are not an RFC assessment] and despite his

recognition that the mental RFC assessment "requires a more detailed assessment" than that made at Step Two, the ALJ's discussion of Plaintiff's RFC contains no analysis of Plaintiff's mild mental limitations.  Instead, the ALJ stated simply that "[t]he analysis of the claimant's nonsevere impairments, *supra*, is incorporated by reference herein."  (AR 20.)  By incorporating the same Step Two severity assessment into the RFC assessment, the ALJ inarguably did not make "a more detailed assessment." Further, the ALJ's "boilerplate assertion . . . that his RFC assessment 'reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis' was not sufficient."  *See Uranna G.*, 2019 WL 5342537, at *4.  The ALJ does not articulate why, after finding that Plaintiff had mild mental limitations in each of the four broad categories, he did not include any restrictions related to those limitations in the RFC.  The Court will not infer in a vacuum that the ALJ considered Plaintiff's mild mental limitations but then validly concluded that they did not cause any significant limitation necessitating inclusion in the RFC. *See Gates v. Berryhill*, No. ED CV 16–00049 AFM, 2017 WL 2174401, at *3 (C.D. Cal. May 16, 2017) (rejecting the Commissioner's argument that one can "infer" that the ALJ considered plaintiff's mild mental limitations as inconsistent with *Hutton* [*v. Astrue*, 491 F. App'x 850 (9th Cir. 2012).)].

2020 WL 4596757, at *13.

In reaching its decision, the Court is mindful that *Wells* and *Patricia C.* are not binding authority, but neither is *Brumfield* or *Northrup*.  The remaining cases relied upon by the Acting Commissioner, also non-binding, are merely offered for the uncontroverted proposition that a mild mental limitation at step two need not *result* in a corresponding mental limitation in the RFC.  *See Long*, 2022 WL 609620, at *6; *D.C.*, 2021 WL 1851830, at *5-6; *Silbaugh*, 2020 WL 5034140, at *9; *Smith*, 2016 WL 3912850, at *9; *Delio*, 2014 WL 4414830, at *4.  But even these cases require the ALJ to "consider" the step two findings during the formulation of the RFC.  *See Long*, 2022 WL 609620, at *6; *D.C.*, 2021 WL 1851830, at *5-6.

In short, a boilerplate statement at step two that the ensuing RFC assessment "reflects" the limitations determined at step two, with no further discussion of those limitations (except to the extent they match the limitations noted in the required discussion of the State agency

27

psychological consultants' administrative findings) is not the "valid explanation" required by Third Circuit case law or the "detailed assessment" required by SSR 96-8p.  *See Hess*, 931 F.3d at 213-14; *Ramirez*, 372 F.3d at 555; SSR 96-8p, 1996 WL 374184, at *5.  It is inconsistent with regulations requiring the ALJ when formulating the RFC to "consider" *all* impairments, even non-severe ones, and at odds with the only circuit-level decision addressing the viability of such a statement.  *See* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Wells*, 727 F.3d at 1068-71.  On remand, the ALJ may determine that Plaintiff's mild mental limitations warrant only "*de minimis*" or even no corresponding restrictions in the RFC, but it is not the province of the Court to make that determination here.  *Balla*, 2019 WL 2482661, at *3; *Curry*, 2017 WL 825196, at *4-6.

 For these reasons, this matter is remanded for consideration of all of Plaintiff's medically determinable impairments in the formulation of the RFC.

## VI.    CONCLUSION

 For the reasons set forth above, Plaintiff's request for review is **GRANTED**, and the matter is remanded for further proceedings consistent with this memorandum.

 BY THE COURT:


  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge